UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NEVADA PROPERTY 1 LLC,<br><br>　　　　Plaintiff(s),<br><br>v.<br><br>NEWCOSMOPOLITANLAS<br>VEGAS.COM,<br><br>　　　　Defendant(s). | 2:12-CV-866 JCM (NJK) |

**ORDER**

Presently before the court is plaintiff Nevada Property 1 LLC d/b/a The Cosmopolitan of Las Vegas's motion for default judgment against defendant newcosmopolitanlasvegas.com. (Doc. # 16). Plaintiff has also moved for a permanent injunction (doc. # 20), and attorneys' fees and costs (doc. # 21).

**I.　Background**

On May 22, 2012, plaintiff filed a complaint in this court alleging violations for (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (2) cybersquatting under the Lanham Act, 15 U.S.C. § 1125(d); (3) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (4) common law trademark infringement; (5) deceptive trade practices under N.R.S. § 598.0915; and (6) intentional interference with prospective economic advantage. (Doc. # 1). On May 23, 2012, the court granted plaintiff's motion for a temporary retraining order. (Doc. # 9). On May 24, 2012, plaintiff posted a $100 bond. (Doc . # 10). On June 1, 2012, the court granted plaintiff a

**James C. Mahan**
**U.S. District Judge**

preliminary injunction. (Doc . # 12).

Defendant was timely served (doc. # 11, the court permitted service by email in doc. # 9, 2:28-3:7); however, defendant has failed to answer or otherwise respond to plaintiff's complaint despite being on notice of plaintiff's claims against it (doc. # 6:17-18; *see* docket generally). On August 22, 2012, plaintiff filed a motion for entry of default against defendant. (Doc. # 14). On August 23, 2012, the clerk's office entered default as to defendant. (Doc. # 15).

**II.     Discussion**

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Federal Rule of Civil Procedure 55(b)(2) provides that "a court may enter a default judgment after the party seeking default applies to the clerk of the court as required by subsection (a) of this rule." FED. R. CIV. P. 55(b)(2).

On August 23, 2012, the clerk entered default against defendant for its failure to plead or otherwise defend the instant lawsuit. (Doc. # 15). Pursuant to Federal Rule of Civil Procedure 55(b)(2), plaintiff now asks this court to enter default against defendant.

**A.     Default Judgment**

The choice whether to enter a default judgment lies within the discretion of the trial court. *Aldabe v. Aldabe*, 616 F.3d 1089, 1092 (9th Cir. 1980). In the determination of whether to grant a default judgment, the trial court should consider the seven factors articulated in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). These factors are: (1) the possibility of prejudice to plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the policy favoring a decision on the merits. *Id.* In applying these *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *see* FED.R.CIV.P. 8(d).

The first *Eitel* factor weighs in favor of granting plaintiff's motion because plaintiff will be prejudiced because it will not be allowed to litigate its claims. *See Adobe Sys. Inc. v. Marmeletos*, 2009 WL 1034143 at *3 (N.D. Cal. Apr. 16, 2009). Defendant has not answered or otherwise responded to the complaint. If plaintiff's motion for default judgment is not granted, plaintiff "will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Security Cans*, 283 F.Supp.2d 1127, 1177 (C.D. Cal. 2002).

The second and third *Eitel* factors favor a default judgment where the claims are meritorious and the complaint sufficiently states a claim for relief. *See Cal. Security Cans*, 238 F.Supp.2d at 1175; *see also Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978)). Plaintiff's complaint states plausible claims for relief for multiple violations of the Lanham Act. (*See* doc. # 1). Further, plaintiff's complaint is well pleaded as it identifies defendant, enumerates plaintiff's rights in its trademarks, describes the steps defendant took to infringe upon its trademark, and sets forth causes of action for defendant's conduct. (Doc. # 1).

Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct. *See Cal. Security Cans*, 238 F.Supp.2d at 1176. The sum of money sought is relatively large, over $100,000; however, the relief sought is appropriate under 15 U.S.C § 1117(d) and is commensurate with the seriousness of defendant's deliberate misconduct. This factor weighs neither in favor nor against granting default judgment.

The fifth *Eitel* factor also favors default judgment. "Once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages." *Geddes,* 559 F.2d at 560. Given the sufficiency of the complaint, evidence of plaintiff's trademark registrations and defendant's infringement, and defendant's default, "no genuine dispute of material facts would preclude granting [plaintiff's] motion." *Cal. Security Cans,* 238 F.Supp.2d at 1177.

Applying the sixth factor, the court cannot conclude that defendant's default is due to excusable neglect. Defendant was properly served with summons and the complaint. (*See* docs. # 11, 9). Defendant's failure to respond or litigate this case cannot be attributable to excusable neglect.

**James C. Mahan**
**U.S. District Judge**

1  *United States v. High Country Broadcasting Co., Inc.,* 3 F.3d 1244, 1245 (9th Cir. 1993) (holding that it was "perfectly appropriate" for the district court to enter default judgment against a corporation that failed to appear in the action through licensed counsel).

The final *Eitel* factor weighs against default judgment. "Cases should be decided upon their merits whenever reasonably possible." *Eitel,* 782 F.2d at 1472. But the mere existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *Cal. Security Cans,* 238 F.Supp. at 1177 (citation omitted). Moreover, defendant's failure to answer or otherwise respond to the complaint "makes a decision on the merits impractical, if not impossible." *Id.*

Having reviewed plaintiff's motion, and evidence previously submitted in this case, and having considered the *Eitel* factors as a whole, the court concludes that the entry of default judgment is appropriate against defendant. The court now turns to the reasonableness of the damages and relief sought in the default judgment.

**B.   Damages, Injunctive Relief, and Attorneys' Fees & Costs**

**1.   Corrective Advertising**

Plaintiff seeks damages of $1,000 as compensation for corrective advertising. In the Ninth Circuit, it is permissible for the court to award damages for prospective corrective advertising. *Adray v. Adry-Mart, Inc.*, 68 F.3d 362 (9th Cir. 1995), *amended*, 76 F.3d 984 (9th Cir. 1996). A plaintiff need not show a specific measure of harm to its goodwill and reputation in order to recover corrective damages. *Adray,* 76 F.3d at 988.

Plaintiff concedes the difficulty in ascertaining the damages plaintiff has suffered. (Doc. # 16, 15:7). Provided that plaintiff seeks a nominal amount of $1,000 in light of the uncertainty of the actual damages suffered by plaintiff, the court finds this amount appropriate.

**2.   Statutory Damages**

Plaintiff also seeks damages in the amount of $100,000 pursuant to 15 U.S.C. § 1117(d) for plaintiffs prevailing on Anti-Cybersquatting Consumer Protection Act ("ACPA") claims. Courts may award statutory damages for cybersquatting:

. . .

**James C. Mahan**
**U.S. District Judge**

- 4 -

> In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in an amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

15 U.S.C. § 1117(d). "[T]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). Plaintiff requests the court to send a clear message that misappropriating famous trademarks with the bad faith intent to profit will not be tolerated. (Doc. # 21, 15:12-15). Further plaintiff asserts that awarding the maximum statutory amount would deter defendant from its ongoing, unlawful conduct.

Plaintiff provides the court with an array of other courts in this district that have awarded statutory damages under ACPA with damages ranging from $1,000 to $1,100,000. While these cases are not binding on the court, they are informative on the matter. Provided that plaintiff also seeks a permanent injunction, the court finds that the maximum statutory award to effectuate deterrence unwarranted here. However, the court finds damages in the amount of $25,000 appropriate.

**3.    Injunctive Relief**

Plaintiff seeks a permanent injunction prohibiting defendant from:

1.  Using the COSMOPOLITAN Marks or any confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs (including, but not limited to, the COSMOPOLITAN Marks) in commerce (including, but not limited to, on any website or within hidden text or metatags contained on or within any website, including the <newcosmopolitanlasvegas.com> website); and

2.  Registering or trafficking in any domain name containing the COSMOPOLITAN Marks or any confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs; and

3.  Copying or using any content posted by Plaintiff on any of Plaintiff's websites, (including, but not limited to, its <cosmopolitanlasvegas.com>

James C. Mahan
U.S. District Judge

- 5 -

1          website) that appears in conjunction with Plaintiff's COSMOPOLITAN

2          Marks or any confusingly similar mark.

3 (Doc. # 16, 12:18-13:1). The Lanham Act "vests the district court with the power to grant injunctions

4 according to principles of equity and upon such terms as the court may deem reasonable, to prevent

5 the violation of any right" of the trademark owner. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d

6 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C. § 1116).

7      "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since

8 there is no adequate remedy at law for the injury caused by defendants' continuing infringement."

9 *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988). The Supreme Court has

10 stated that courts must consider the following factors in determining whether to issue a permanent

11 injunction: (1) likelihood of irreparable injury if preliminary relief is not granted; (2) a likelihood

12 of success on the merits; (3) balance of hardships; and (4) advancement of the public interest. *Winter*

13 *v. N.R.D.C.*, 555 U.S. 7, 20 (2008). "An injunction is a matter of equitable discretion" and is "an

14 extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to

15 such relief." *Id.* at 22, 32. A moving party is required to make a showing that all of these

16 requirements have been met. *American Trucking Assoc. v. City of Los Angeles*, 559 F.3d 1046, 1052

17 (9th Cir. 2009).

18      Plaintiff has achieved success on the merits through defendant's default. Further, plaintiff

19 is likely to suffer irreparable injury because, absent injunctive relief, defendant's trademark

20 infringement is likely to continue. Consumer confusion and potential dissatisfaction with defendant's

21 website are likely to have a negative effect on plaintiff's reputation and goodwill. *See Rent-A-Ctr.,*

22 *Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("intangible

23 injuries, such as damage to . . . goodwill, qualify as irreparable harm").

24      Also, the balance of hardships and public interest both weigh in favor of plaintiff. Plaintiff

25 has expended a substantial amount of money in promoting and using its mark and any harm to

26 defendant in forcing it to comply with the requirements of the law is outweighed by plaintiff's effort

27 to protect its marks. Further, the public interest lies in favor of upholding property interests in

28

**James C. Mahan**
**U.S. District Judge**

trademarks and preventing customer confusion.

Consider the *Winter* factors, the court determines that a permanent injunction is appropriate to enjoin defendant from any further infringement.

### 4.     Attorneys' Fees & Costs

Under 15 U.S.C. § 1117(a) a court may award reasonable attorneys' fees to the prevailing party in "exceptional cases." *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) (quoting 15 U.S.C. § 1117(a)). Although the statute does not define the term "exceptional," generally a trademark case is exceptional when the court finds the defendant acted maliciously, fraudulently, deliberately, or willfully. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003); *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) "knowingly, maliciously, and oppressively, and with an intent to . . . injure.").

Here, the complaint alleges that defendant used plaintiff's identical Cosmopolitan marks on the <newcosmopolitanlasvegas.com> website. (*See* doc. # 1, ¶¶ 17-18). Because the court must accept the allegations in the complaint as true, defendant deliberately and knowingly committed acts of trademark infringement and cybersquatting. Therefore, finding that this is an "exceptional" case under 15 U.S.C. § 1117(a), an award of attorneys' fees is justified.

In addition to reasonable attorneys' fees, plaintiff is also entitled to an award of costs. *See* 15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office [or] a violation under section 1125(a) or (d) . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover (3) the costs of the action."). Because defendant has committed acts of cybersquatting under 15 U.S.C. § 1125(d), plaintiff is entitled to recover the costs of this action.

In the Ninth Circuit, the starting point for determining reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *See Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir. 1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport*

**James C. Mahan**
**U.S. District Judge**

- 7 -

*Financial, Inc.,* 523 F.3d 973, 978 (9th Cir. 2008) (internal quotations and citation omitted). In calculating the lodestar, the court must determine a reasonable rate and a reasonable number of hours for each attorney. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds,* 808 F.2d 1373 (9th Cir. 1987). The lodestar is deemed to be presumptively reasonable, though the district court has the discretion to consider and upward or downward adjustment.

Here, plaintiff seeks $890.64 in costs (including $440.64 in non-taxable costs). Plaintiff also seeks attorneys' fees in the amount of $14,776.20; totaling $15,666.84. The declaration of counsel demonstrates these billing practices and costs incurred. (Doc. # 16-1). Plaintiff also complied with Local Rule 54-16.[1]

Having reviewed counsel's declaration, computed each attorney's hourly rate, and having considered the time spent on each task outlined in sealed exhibit A; the court finds that the amount of hours expended and the billable rates used to be reasonable. Further, the court finds the costs expended on prosecuting this case to be reasonable. Thus, plaintiff is entitled to the requested amount in attorneys' fees ($14,776.20) and costs ($890.64), totaling $15,666.84.

### III. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Nevada Property 1 LLC d/b/a The Cosmopolitan of Las Vegas's motion for default judgment against defendant newcosmopolitanlasvegas.com (doc. # 16) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff Nevada Property 1 LLC d/b/a The Cosmopolitan of Las Vegas's motion for a permanent injunction against defendant newcosmopolitanlasvegas.com (doc. # 20) be, and the same hereby is, GRANTED.

. . .

---

[1] The court notes that plaintiff has also requested the court to order the clerk of the court to exonerate the $100 bond that plaintiff deposited with the court as security for the temporary restraining order and preliminary injunction.

James C. Mahan
U.S. District Judge

- 8 -

IT IS FURTHER ORDERED that plaintiff Nevada Property 1 LLC d/b/a The Cosmopolitan of Las Vegas's motion for a attorneys' fees and costs against defendant newcosmopolitanlasvegas.com (doc. # 21) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant and its agents, servants, employees and/or all persons acting in concert or participation with defendant are hereby permanently enjoined from:

1. Using the COSMOPOLITAN Marks or any confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs (including, but not limited to, the COSMOPOLITAN Marks) in commerce (including, but not limited to, on any website or within hidden text or metatags contained on or within any website, including the <newcosmopolitanlasvegas.com> website); and

2. Registering or trafficking in any domain name containing the COSMOPOLITAN Marks or any confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs; and

3. Copying or using any content posted by Plaintiff on any of Plaintiff's websites, (including, but not limited to, its <cosmopolitanlasvegas.com> website) that appears in conjunction with Plaintiff's COSMOPOLITAN Marks or any confusingly similar mark.

IT IS FURTHER ORDERED that defendant and its agents, servants, employees and/or all persons acting in concert or participation with defendant are permanently enjoined from using the <newcosmopolitanlasvegas.com> domain name or any other variation of the COSMOPOLITAN Marks used in any letter string in any domain name.

IT IS FURTHER ORDERED that the registration for <newcosmopolitanlasvegas.com> domain name be forfeited and permanently transferred to plaintiff NEVADA PROPERTY 1 LLC.

IT IS FURTHER ORDERED that the current registrar and/or the ".com" registry shall effectuate the domain name transfer, permanently transferring the registration on the <newcosmopolitanlasvegas.com> domain name to plaintiff NEVADA PROPERTY 1 LLC.

**James C. Mahan**
**U.S. District Judge**

- 9 -

IT IS FURTHER ORDERED that defendant pay plaintiff damages for corrective advertising of $1,000.00.

IT IS FURTHER ORDERED that defendant pay plaintiff statutory damages of $25,000.00 for the infringing domain name.

IT IS FURTHER ORDERED that defendant pay plaintiff's reasonable attorneys' fees and costs of $15,666.84.

IT IS FURTHER ORDERED that the clerk of the court exonerate plaintiff's $100 bond submitted to this court on May 24, 2012, and return the amount to plaintiff's counsel.

IT IS FURTHER ORDERED that jurisdiction of this case shall be retained by this court for the purpose of enforcing this judgment.

DATED January 15, 2013.

_____
**UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**

- 10 -